

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35366-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CODY TYLER BENNIE WARDLAW, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Cody Wardlaw appeals the trial court's denial of his request to be sentenced to a prison-based DOSA[1] following his convictions for one count of first degree trafficking in stolen property in this matter, and a series of burglaries and possession of a stolen motor vehicle charged in a separate matter.[2] Mr. Wardlaw contends the trial court abused its discretion when it based its denial of the sentencing alternative on an impermissible factor: Mr. Wardlaw's asserted lack of remorse. The trial

---

[1] Drug offender sentencing alternative. *See* RCW 9.94A.660.

[2] Those charges—two counts of residential burglary, two counts of second degree burglary, and one count of possession of a stolen motor vehicle—were filed in Stevens County Superior Court, cause no. 17-1-0057-9, and are the subject matter of another appeal. *See State v. Wardlaw*, No. 35367-2-III.

court's observation that Mr. Wardlaw was not remorseful was in the context of

questioning the sincerity of his commitment to treatment. We find no abuse of discretion

and affirm.

## FACTS AND PROCEDURAL BACKGROUND

While out on bail for charges of burglary and possession of a stolen motor vehicle,

Mr. Wardlaw pawned a 40-inch Samsung TV and a guitar amplifier that had been stolen

in a recent burglary of The Abundant Life Fellowship Church in Chewelah. The pawn

shop reported Mr. Wardlaw's pawn of the stolen property to law enforcement. While Mr.

Wardlaw was not charged with the church burglary, he was charged with one count of

first degree trafficking in stolen property and one count of forgery.

Mr. Wardlaw agreed to enter guilty pleas in both of his pending matters. In this

case, he agreed to plead guilty to first degree trafficking in stolen property, in exchange

for which the State agreed to dismiss the forgery charge.

At a sentencing hearing that addressed his convictions in both matters, Mr.

Wardlaw asked for a prison-based DOSA. His lawyer explained to the court that Mr.

Wardlaw had "a severe drug problem with methamphetamine" despite treatment that led

to a two-year period of sobriety years earlier. Report of Proceedings (RP) at 21. He

argued that with a prison-based DOSA, Mr. Wardlaw would have the "opportunity to try

and remedy this problem so he's not right back out after he gets out of prison doing the

same things over and over again." RP at 23.

2

The prosecutor conceded that Mr. Wardlaw had been "very cooperative" with law enforcement but nonetheless recommended a standard range prison sentence. RP at 20. The prosecutor told the court:

> [L]aw enforcement had him on possession of stolen motor vehicle but he admitted to burglaries and if he hadn't admitted to [them] it would have been very, very difficult if not impossible to prove. But he was very cooperative—law enforcement. He is accepting—responsibility here—very—at a fairly early—time in the case, and he's agreed to pay full restitution to all of the victims here.
> . . . that is significant. I think—he does deserve some credit for that. But—the court weighs the harm that he's—he's done to the community and his criminal history, versus the—the mitigating factors, I do believe that he should—just get a straight prison sentence here, your Honor.

RP at 20-21. With an offender score of 6 and a seriousness level of 4, the standard range for Mr. Wardlaw's first degree trafficking in stolen property conviction was 33-43 months. His highest standard range for the burglary and possession of a stolen motor vehicle convictions in his other pending matter was 63 to 84 months, and the State was recommending a standard range sentence in that case of 73 months.

In letters to the trial court, Mr. Wardlaw's mother, grandmother, and sister asked that it impose a sentence that included substance abuse treatment, and Mr. Wardlaw's father appeared at the sentencing to make the same request. Recounting Mr. Wardlaw's substance abuse issues and the turmoil it had caused for his family, Mr. Wardlaw's father echoed defense counsel's request for a prison-based DOSA, stating: "I'm not asking for time off. I'm asking for him to get the help he needs when he's in there." RP at 24.

3

When given the opportunity to allocute, Mr. Wardlaw told the court:

> I don't want to get high any more. . . .  Never once did I come into this thinking and saying that, "It wasn't me," "I'm completely innocent." You know, I know I had a part in all this, and I know I deserve to be punished. . . .
>
> When I left [treatment] seven years ago,—it gave me the tools and I stayed clean for almost two years,—two years—I didn't go to meetings; I just—I knew what to do, and I—I would like to have those tools in my life again.  I don't—I don't want to be—part of the problem any more.  I don't—And I know Stevens County's getting cleaned up and I'm sorry I had to be part of the trash that needed to be taken out, but—I want to be part of the solution again.

RP at 26-27.  He also told the court that without the alternative, he would "sit in prison for 73 months straight learning how to get comfortable doing time" and "come out not caring. . . .  I'm going to have no family.  I'm going to be angry."  RP at 26.

The trial court considered the letters, statements and argument to the court but denied the request for a DOSA, telling Mr. Wardlaw, "I don't think that you expressed any remorse or regret about what you did to your victims, about the people you have terrorized. . . .  Your remorse here today, Mr. Wardlaw, is for yourself."  RP at 30. Noting that Mr. Wardlaw's victims would "have to live with this victimization for the rest of their lives," the court explained:

> You have—essentially just been on a spree of terrorizing people, and come and said, "You know what?  I'm a raging drug addict, I have been for years, the treatment I went to didn't work; you know, I would like to be able to employ all the skills I learned at [treatment]."
> Well, you could have.  You didn't.  You still can.
> So there's self-help for you, there's all kinds of education and help that you can get on your own volition while you are incarcerated.

4

RP at 30-31.  The court expressed its hope that time spent in prison "will persuade you to act in your own best interest and get the help that you need while you can, but [it will] most definitely deter you from coming back in this community and terrorizing people." RP at 31.  It sentenced Mr. Wardlaw to 40 months' total confinement in this matter.[3]  He appeals the denial of a DOSA.

## ANALYSIS

By statute, a sentence within the standard sentence range is not appealable.  RCW 9.94A.585(1).  This includes a standard range sentence imposed after rejecting a defendant's request for a DOSA.  *State v. Grayson*, 154 Wn.2d 333, 338, 111 P.3d 1183 (2005).  An offender may challenge the procedure under which his sentence was imposed, however.  *Id.*  "A court that fails to consider a requested alternative abuses its discretion."  *State v. Hender*, 180 Wn. App. 895, 901, 324 P.3d 780 (2014).

Mr. Wardlaw contends that he met all of the criteria to be eligible for the drug offender sentencing alternative, and his remorse or lack thereof "is not an appropriate factor in assessing whether he merits regimented, structured, and highly incentivized drug treatment."  Br. of Appellant at 9.

---

[3] The trial court ordered this sentence to run concurrent with the 73-month sentence imposed in cause no. 17-1-00057-9.

When the drug offender sentencing alternative is imposed, "the defendant serves only about one-half of a standard range sentence in prison and receives substance abuse treatment while incarcerated." *Hender*, 180 Wn. App. at 900. A DOSA is intended to provide treatment to offenders judged likely to benefit from treatment. *Grayson*, 154 Wn.2d at 337. If the offender meets the statutory criteria, trial courts have broad discretion whether to grant a DOSA. RCW 9.94A.660.

The State concedes that Mr. Wardlaw was eligible for a prison-based DOSA, "[b]ut eligibility does not automatically lead to a DOSA sentence." *Hender*, 180 Wn. App. at 900. The sentencing court must determine if the alternative sentence is appropriate. *Id*.

Mr. Wardlaw focuses on the trial court's comment on his lack of remorse, ignoring the broader context in which his lack of remorse was a cause of concern to the court. The court did not speak only of a lack of remorse, but observed that Mr. Wardlaw had repeatedly committed crimes, terrorizing his victims, knowing that treatment could be successful, but with no renewed effort to overcome his substance abuse problem. It also placed importance on community safety. Mr. Wardlaw argues that his failure to obtain treatment on his own does not render him ineligible for a DOSA, and we agree. But in deciding whether to impose the sentencing alternative, a reasonable sentencing court could view the matters observed by this court—a concern for community safety, and an offender's drug-driven, repeated infliction of harm on innocent victims with no

6

effort to stop and no remorse-driven desire to stop—as relevant. We find no abuse of discretion.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, A.C.J.